## WHITMAN v. VANDERBILT.

(Circuit Court of Appeals, Second Circuit. May 12, 1896.)

1. DEMURRAGE—DELAY BY ABSENCE OF MASTER.

The master or shipowner cannot recover demurrage, under a charter party, for delay in discharging caused by the master's absence from the vessel, so that she could not be moved to another dock upon the purchaser of the cargo refusing to receive it on the ground that it was in bad condition.

2. SHIPPING—DUTY OF MASTER—SIGNING BILLS OF LADING.

The master cannot be held at fault for accepting lumber cargo from a firm to which his ship was consigned by the charterer for loading, and giving a bill of lading describing it as in apparent good order and condition, when in fact it was largely rotten, if its worthless condition is only determined by putting the boards through a planing mill. The master is not required to be an expert in lumber.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by John W. Whitman, master of the schooner Hattie A. Marsh, against Edward W. Vanderbilt, to recover demurrage at the rate of $50 per day for delay in discharging a cargo of lumber carried by the schooner for respondent, as her charterer. The district court dismissed the libel, and the libelant has appealed. The respondent, Edward W. Vanderbilt, who was a lumber merchant in New York City, in February, 1895, purchased a quantity of pine boards from Fairhead, Strahan & Co., of Jacksonville, Fla. He afterwards sold the same to Louis Bosset, also of New York City, and chartered the Hattie A. Marsh to transport the same to New York. By the terms of the charter party, the schooner was to carry "a full and complete cargo, under and on deck, of resawed yellow pine lumber, and/or boards," from Jacksonville to New York, at $4.50 per thousand superficial feet, payable in cash on proper delivery of cargo at port of discharge. The charter party provided for "customary dispatch for discharging at port of discharge," the charterer to pay $50 per day demurrage for detention by his default. The vessel was to report to Fairhead, Strahan & Co. at Jacksonville for cargo. She accordingly proceeded thither, and loaded 301,621 feet of boards, the master signing a bill of lading acknowledging the same to be in apparent good order and condition. She arrived at New York with the cargo February 27, 1895, and was ordered to Bosset's lumber yard in Newtown, and began discharging at the dock there on the morning of March 1st. The lumber proved to be poor, and Bosset refused to accept it. The work of discharging was therefore stopped. The respondent, Vanderbilt, was notified, and, on going to see the lumber, found that the captain was absent, the steward being left in charge. The captain had gone to Maine on February 28th, and did not return until March 9th. On examination of the cargo, and on being told by the stevedore that the lumber was bad all through, Vanderbilt determined to discharge it at the Empire stores. But the steward declined to do anything until authorized by the captain, so that it was four days before the schooner was towed to the Empire storage yard. She was there discharged in 15 days, excluding Sundays, and the libelant claimed 5½ days' demurrage, and $18 for towage; in all, $293.

In the district court the following memorandum of opinion was filed by BROWN, District Judge:

"The master of a vessel cannot recover demurrage for the delay of a ship in discharging, where the delay has been caused by his own misconduct in the execution of the contract of carriage; and such is clearly the present case. The master signed a bill of lading for the receipt of the lumber at Jacksonville as in good order and condition, whereas it was not in good order and condition, but largely decayed and unmerchantable, as I find he well knew. Upon the strength of this bill of lading, and on the faith thereof, the lumber was sold by the charterer, before arrival, to Bosset, to whose yard it was sent for delivery, in the ordinary course of business. The vendee, on discovering its condition, rightly refused to receive it, on the ground that it was, in considerable part, decayed and unmerchantable. The vessel, therefore, had to be sent elsewhere to unload. The master had, however, absented himself, and left no one in charge to assume the responsibility of moving the ship. This was additional misconduct. But for the misconduct of the master in both of these respects, there would have been no delay in discharge, and no demurrage would have accrued. Neither ship nor master can take advantage of the master's own wrong. The libel is therefore dismissed."

Chas. C. Burlingham, for appellant.

Geo. H. Gilman, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. For any delay caused by the master's absence from the vessel, the charterer is not responsible. The master, however, was not in fault for accepting the cargo offered to him by the firm at Jacksonville to whom he was required to report, nor in signing bills of lading which described it as "in apparent good order

and condition." , The master was not an expert, nor required to be one; and it is a significant fact ·that although the respondent, the stevedore, and the inspector all testified that the lumber was rotten, they seem to have satisfied themselves on that point by taking a number of plank out, and putting the wood "in a planing mill to plane it through to see if the rotten wood would plane out." They found it "was rotten all the way through. It wouldn't plane out." The master certainly could not be expected to apply any such test to the lumber which the firm to which his ship was consigned loaded aboard as her cargo. Deducting from the 5½ days which intervened between the expiration of the lay days and final discharge of the vessel the two days during which the steward was trying to get the master's authority to shift to a new berth, there remain 3½ days' demurrage, for which the charterer is liable, besides the item of $18 paid to a tugboat for shifting. The decree of the district court is reversed, and cause remanded, with instructions to decree for the libelant for $193, with interest, and costs of both courts.